**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MIGUEL A. PEREZ and OMAYRA MONTES,**

      **Plaintiffs,**

v.                                                          **Case No:   6:19-cv-1154-Orl-37EJK**

**U.S. LEADER RESTAURANTS, INC.
and TONY CAPLEY,**

      **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court on the parties' Joint Motion for Approval of the Settlement Agreement ("the Motion"), filed June 23, 2020. (Doc. 40.) Upon consideration, I respectfully recommend that the Motion be granted.

**I.   BACKGROUND**

On June 21, 2019, Plaintiffs Miguel A. Perez and Omayra Montes instituted this action against Defendants U.S. Leader Restaurants, Inc., and Tony Capley, alleging violations of the unpaid overtime and minimum wage provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–209 (2018). (Doc. 1, ¶¶ 37–84.) Specifically, Perez alleges that Defendants violated the overtime wage provision, while Montes alleges violations of the minimum wage provision.[1] (*Id.*)

Perez worked for Defendants as a maintenance employee at the Taco Bell restaurant located at 2403 Hiawassee Road, Orlando, Florida, from May 24, 2016, to January 11, 2019. (*Id.*

---

[1] The factual allegations section of the Complaint is bifurcated into two sections: one for allegations pertaining to Perez and the other for allegations pertaining to Montes. (*Id.* ¶¶ 5–36.)

¶¶ 7–10.) Perez alleges that during this time, he was misclassified as a Maintenance Supervisor when he was actually a "refrigeration and A/C technician with handyman skills." (*Id.* ¶ 11.) As a maintenance employee, Perez alleges that he regularly worked from 6:00 a.m. to 9:00 p.m. Monday through Saturday, and four hours on Sundays; in other words, Perez worked at least 94 hours a week. (*Id.* ¶ 17.) Perez alleges that he was never compensated at a rate of 1.5 times his regular rate for the hours he worked in excess of 40 hours per week. (*Id.* ¶¶ 17–20.)

Montes worked for Defendants as a clerk, performing general office work, from May 24, 2016, to January 11, 2019. (*Id.* ¶ 28.) Montes alleges that she worked five days a week from 9:00 a.m. to 3:00 p.m., for an average of 30 hours a week. (*Id.* ¶ 30.) During that time, Montes alleges that Defendants "did not pay her one single hour of work at any rate, not even at the minimum wage rate as established by the [FLSA]." (*Id.* ¶ 31.)

The parties negotiated a compromise and settlement of Plaintiffs' claims and filed the instant Motion for approval of their settlement agreement (the "Agreement") (Doc. 40-1), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 40.)

## II.  STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29

U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

### III. DISCUSSION

#### A. Settlement Sums

According to the Agreement, Defendants have agreed to pay Perez $17,000: $8,500 for Perez's unpaid overtime wage claim, and $8,500 in liquidated damages. (Doc. 40-1, ¶ 1.) Perez initially sought $68,642.10 in overtime wage compensation. (Doc. 20 at 2.) As to Montes, Defendants have agreed to pay $4,500, representing $2,250 in unpaid minimum wages and $2,250 in liquidated damages. (Doc. 40-1, ¶ 1.) Montes initially sought $33,500.11 in unpaid minimum wage compensation. (Doc. 19 at 2.) Because Perez and Montes will receive less than the amount to which they claimed they were entitled under the FLSA, they have compromised their claims

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."). On review, I find both of the settlement sums that Plaintiffs have agreed to accept in satisfaction of their respective claims to be fair and reasonable in comparison to their original claims, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. I also find these amounts fair in relation to the nature of the dispute between the parties contesting Plaintiffs' entitlement to overtime and minimum wage payments. Thus, I find that the settlement sums represent a fair resolution of a bona fide dispute between the parties and that Plaintiffs have not unfairly compromised their claims.

### B. Attorney's Fees

Plaintiffs' attorney will receive a total of $15,000.00 for fees and costs. (Doc. 40-1, ¶ 1.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiffs, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 40 at 5); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. Release

The parties' Agreement[3] states that the amounts paid by Defendants to Plaintiffs are being "paid and provided in full settlement of Plaintiffs' FLSA claims, including claims for minimum wages, overtime pay, liquidated damages, attorney's fees, and court costs." (Doc. 40-1, ¶ 1.) It also provides that "the settlement checks will be sent to Plaintiffs' attorney within seven . . . days after the Court signs an order approving this settlement and enters final judgment dismissing the case with prejudice." (*Id.* ¶ 4.) Thus, the undersigned concludes that in exchange for the monies paid by Defendants, Plaintiffs agree *only* to dismiss this FLSA action, Case No. 6:19-cv-1154-Orl-37EJK, with prejudice.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

The undersigned finds that the release passes judicial scrutiny because it does not require Plaintiffs to release unknown claims that are *unrelated* to their overtime and unpaid minimum wage claims in the present case, and it is limited to only the named Defendants. *Dreasher v. Paul E. Walsh Trucking, Inc.*, No. 6:17-cv-1288-Orl-41TBS, 2018 WL 1040000, at *4 (M.D. Fla. Jan. 24, 2018), *report and recommendation adopted as modified*, 2018 WL 1010844 (M.D. Fla. Feb. 22, 2018); *Adams v. Daytona Resort Grp., Inc.*, No. 6:17-cv-1287-Orl-40KRS, 2017 WL 5499785, at *3 (M.D. Fla. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 5444436 (M.D.

---

[3] The Agreement does not contain a separate release provision section. (*See* Doc. 40-1.)

Fla. Nov. 14, 2017); *Quinones v. Siemens Indus., Inc.*, No. 6:15-cv-1068-ORL-28TBS, 2016 WL 11579796, at *2 (M.D. Fla. Oct. 25, 2016), *report and recommendation adopted*, 2016 WL 11579809 (M.D. Fla. Oct. 27, 2016). Thus, I find the release here to be sufficiently narrowly tailored to pass judicial scrutiny.

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the Motion (Doc. 40);
2. **FIND** the parties' Agreement (Doc. 40-1) to be a fair and reasonable resolution of a *bona fide* dispute under the FLSA;
3. **DISMISS** this action **WITH PREJUDICE**; and
4. **DIRECT** the Clerk of Court to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1. **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on August 19, 2020.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record